PARADISE DISTRIBUTORS, INC. and Paradise Beverage, Inc., Plaintiffs,

v.

EVANSVILLE BREWING COMPANY, INC., Defendant.

No. 94–C–1178–H.

United States District Court, N.D. Oklahoma.

April 5, 1995.

W.E. Sparks, Tulsa, OK and W. Kirk Clausing, Tulsa, OK, for plaintiffs.

Brooke S. Murphy, Crowe & Dunlevy, Oklahoma City, OK, Cheryl L. Cooper, Jon Ed Brown, Crowe & Dunlevy, Tulsa, OK and C. Robert Burton, IV, Tulsa, OK, for defendant.

## *ORDER*

HOLMES, District Judge.

This matter comes before the Court on a Motion to Remand by Plaintiffs Paradise Distributors, Inc. ("Distributors") and Paradise Beverage, Inc. ("Beverage") (collectively, "Paradise"); an Application for a Preliminary Injunction by Paradise;[1] a Motion to Dissolve the Temporary Restraining Order by Defendant Evansville Brewing Company, Inc. ("Evansville"); and a Motion by Evansville Requiring Plaintiffs to Post Bond.

Evansville manufactures both "strong" (in excess of 3.2% alcohol by weight) malt beverage products ("strong beer") and 3.2% (3.2% alcohol by weight) malt beverage products ("3.2% beer"). Distributors is in the business of wholesale beverage distribution. On March 17, 1994, Evansville appointed Distributors as its exclusive wholesale distributor of 3.2% beer in 20 counties in Oklahoma pursuant to wholesaler appointment agreement number 28005. Beverage is also in the business of wholesale beverage distribution and operation of a bonded warehouse. On March 17, 1994, Evansville appointed Beverage as its exclusive wholesale distributor of strong beer in all of Oklahoma pursuant to wholesaler appointment agreement number 28020. Wholesaler appointment agreement number 28005 and wholesaler appointment agreement number 28020 (collectively, the "Agree-

---

**1.** Plaintiffs' application for a preliminary injunction is contained in the prayer for relief in the petition filed in the Oklahoma District Court for Washington County.

ments") are identical except for the designation of brands and the identified market area.

Evansville notified Paradise that it was exercising its right, pursuant to section 8.2(c) of the Agreements, to terminate the Agreements unilaterally, effective December 19, 1994, without any right of cure, due to Paradise's alleged failure to comply with the payment terms of the Agreements. As a result of the notification, this litigation ensued. On December 19, 1994, the Oklahoma District Court for Washington County entered an order (the "TRO") restraining Evansville from terminating the Agreements. On December 22, 1994, prior to a hearing on the TRO, Evansville removed the Washington County proceeding to this Court.

On January 6, 1995, Evansville filed a motion to dissolve the TRO. On January 9, 1995, Plaintiffs moved to remand the action to state court. Finally, on February 3, 1995, Evansville moved for an order requiring Plaintiffs to post bond. On March 31, 1995, this Court held a hearing on all pending motions.

## A. Plaintiffs' Motion to Remand

 Plaintiffs assert that their claims do not satisfy the jurisdictional amount in controversy requirement of at least $50,000, and, therefore, Defendant's removal cannot be sustained. Based upon a review of the record and the applicable law, this Court concludes that removal was proper.

In the complaint, Plaintiffs seek "a temporary restraining order and injunction". Although Plaintiffs' complaint appears to be premised on a theory of breach of contract, Plaintiffs request no money damages. In the notice of removal, Evansville correctly asserts that "[t]he amount in controversy cannot be conclusively determined from the Plaintiffs' Complaint and Temporary Restraining Order (the "Complaint")." Evansville further states that, "from the standpoint of the Defendant in complying with the Plaintiffs' requested injunctive relief the nature of this case is such that the matter and amount in controversy exceeds the sum or value of $50,000.00, exclusive of interest and costs."

 Removal jurisdiction exists between "diverse" citizens if "the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs". 28 U.S.C. § 1332(a) (1988). It is settled law in this Circuit that, when injunctive relief is sought, the amount in controversy requirement may be satisfied if the damages either to the plaintiff or to the defendant exceed the requisite jurisdictional amount. *Ronzio v. Denver & R.G.W.R. Co.*, 116 F.2d 604, 606 (10th Cir.1940). In determining the defendant's damages for this purpose, the defendant's cost of complying with an injunction may be considered. *Justice v. Atchison, Topeka & Santa Fe Ry. Co.*, 927 F.2d 503, 505 (10th Cir.1991); *Oklahoma Retail Grocers Assoc. v. Wal–Mart Stores, Inc.*, 605 F.2d 1155, 1160 (10th Cir.1979); *Ronzio*, 116 F.2d at 606. To sustain removal, the removing defendant must prove that it is "reasonably probable" that the amount in controversy exceeds $50,-000. *Thomas Well Serv., Inc. v. Williams Natural Gas Co.*, No. 93–4090–SAC, 1993 WL 393708 at *2, 1993 U.S. Dist. LEXIS 14085 at *9 (D.Kan. Sept. 8, 1993); *accord Mutual First, Inc. v. O'Charleys of Gulfport, Inc.*, 721 F.Supp. 281, 283 (S.D.Ala.1989).

In the instant case, Evansville has submitted an affidavit from the controller of the company, Daren Gress, which states that compliance with the injunction would result in a projected net lost profit of $116,121.60 for strong beer and $72,576.00 for 3.2% beer to Evansville. *See* Affidavit of Darren Gress, sworn to January 27, 1995 ¶¶ 3–5. This affidavit is uncontroverted. Thus, according to the authorities cited above, these sworn projections of net lost profits alone are sufficient to support Defendant's removal of Paradise's claims. On that basis, the Court finds that Evansville has demonstrated that it is reasonably probable that the amount in controversy exceeds $50,000. Plaintiffs' motion to remand this action to the Oklahoma District Court for Washington County is hereby denied.

## B. Plaintiffs' Application for a Preliminary Injunction

 Paradise argues that this Court should enter a preliminary injunction enjoin-

ing Defendant from terminating the Agreements pending a resolution of the instant claims.

An injunction is extraordinary relief, and the court's injunctive power should only be exercised with great caution. *Smith v. Soil Conservation Serv.*, 563 F.Supp. 843, 844 (W.D.Okla.1982). To obtain such extraordinary relief, the moving party must demonstrate that (1) it will suffer irreparable harm unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits. *Tri–State Generation & Transmission Assoc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir.1986); *Smith*, 563 F.Supp. at 844.

■ "A showing of irreparable harm is usually considered the single most important requirement in determining whether or not to issue a preliminary injunction." *General Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*, 862 F.Supp. 1070, 1074 (S.D.N.Y.1994) (citations omitted); *accord City of Chanute v. Williams Natural Gas Co.*, 678 F.Supp. 1517, 1526 (D.Kan.1988). An irreparable injury is an injury for which a monetary award cannot be adequate compensation. *Tri–State Generation & Transmission Assoc., Inc.*, 805 F.2d at 355. "If the injury complained of may be compensated by an award of monetary damages, then an adequate remedy at law exists and *no irreparable harm may be found as a matter of law.*" *General Textile Printing & Processing Corp.*, 862 F.Supp. at 1074 (citation omitted) (emphasis added).

Claims arising from the alleged breach of a wholesaler or distributor contract to provide goods or services are generally compensable by money damages. *See, e.g., Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 763 (2d Cir.1979) (manufacturer's cancellation of retail dealership is compensable where relationship not of sufficient duration to build up much reputation and

goodwill and there was no evidence that loss of product line would result in lost customers); *see also, e.g., Lafayette Beverage Distribs., Inc. v. Anheuser–Busch, Inc.*, 545 F.Supp. 1137, 1151 (N.D.Ind.1982) (termination of beverage wholesaler contract compensable where wholesaler "can prove, in dollar amounts, the damage, if any, to [its] reputation, goodwill and economic harm" and where product line terminated constituted only 28% of sales).[2] As the court stated in *Jack Kahn Music Co.*:

> [c]utting through the morass of unsupported allegations of irreparable damage, the essence of Kahn's claim is for the loss of the alleged profitable business of selling Baldwin pianos, organs and other musical instruments. There is no doubt that any such loss is provable. So also, even if we take at face value Kahn's statement that it had "expended large sums promoting and advertising Baldwin's products," all these are clearly also provable as part of Kahn's damages, if the cancellation was wrongful.

604 F.2d at 763.

This analysis is applicable to the instant case. Plaintiffs argue that:

> [l]oss of an ongoing business of the economy or beverage product market developed in Washington and Oklahoma county geographic areas by Paradise can be found to constitute irreparable harm because Paradise cannot replace such product line with a comparably priced product as would be necessary to maintain its geographic market area. (citations omitted). Dissolution of the Temporary Restraining Order and denial of Application For Injunctive Relief will destroy the efforts of Paradise during the past two (2) years to develop an ongoing business to a level of profitability for which Paradise could be properly compensated in accordance with the arbitration provisions of the Wholesaler Appointment Agreements.

Plaintiffs' Proposed Findings of Fact and Conclusions of Law in Support of Plaintiff's Application for Temporary Injunction ("Plaintiffs' Proposed Findings of Fact")

**2.** The parties have not identified any Tenth Circuit cases which discuss whether the termination of a wholesaler or distributor contract by a manufacturer constitutes irreparable harm.

¶ 35; *see also* Affidavit of Donald R. Ballard, sworn to January 17, 1995 ("Ballard Aff.") ¶ 18.

Plaintiffs rely on a line of cases holding that the threatened destruction of an ongoing business may constitute irreparable harm. *See, e.g., Roso–Lino Beverage Distribs., Inc. v. Coca–Cola Bottling Co.,* 749 F.2d 124, 125–26 (2d Cir.1984) (money damages cannot fully compensate husband and wife owners of eleven year distributorship who stand to lose business forever); *Travellers Int'l AG v. Trans World Airlines, Inc.,* 684 F.Supp. 1206, 1216 (S.D.N.Y.1988) (loss of 95% of business coupled with potential loss of goodwill through the termination of an entire product line constitutes irreparable harm).

Although the Court granted Plaintiffs an evidentiary hearing, the record lacks the facts necessary to sustain Plaintiffs' argument under the above-cited authorities. The Agreements appointing Paradise as the exclusive wholesaler for Evansville strong beer and 3.2% beer have only been in effect since March 17, 1994—barely one year. Thus, the relationship which Paradise seeks to protect cannot be characterized as "longterm". Furthermore, Plaintiffs have failed to adduce any evidence that the loss of the Evansville product line would destroy or seriously impair the economic viability of Paradise. Paradise distributes beverages other than Evansville 3.2% and strong beer.[3] And Plaintiff has not introduced evidence that the termination of the Agreements will result in a loss or destruction of goodwill that cannot be compensated by money damages. *Cf. Jack Kahn Music Co.,* 604 F.2d at 762–63 (loss of goodwill is an important factor in granting a preliminary injunction to a dealership threatened with termination).[4]

In addition, Plaintiffs rely on a damages provision in the Agreements to support further their allegation of irreparable injury.

The Agreements state that, in the event of a breach by Evansville, Plaintiffs' sole remedy is:

> an amount equal to the net earnings before federal and state income taxes earned by WHOLESALER on account of the sale and distribution of EVANSVILLE BREWING products during the immediate preceding complete annual accounting period of WHOLESALER.

Plaintiffs state that "the Evansville products lines are not yet profitable to Paradise on a net income concept". Ballard Aff. ¶ 17. Accordingly, they argue that the damages provided for in the Agreements "will not be sufficient monetary compensation to Paradise". Plaintiffs' Proposed Findings of Fact ¶ 27.

This argument does not further Plaintiffs' claim of irreparable harm. To the contrary, the terms of the Agreements to which Plaintiffs refer appear to provide for a possible remedy of money damages in the event of a breach by Evansville. While the Court expresses no opinion as to whether this provision is enforceable, its presence in the Agreements demonstrates that the parties contemplated that a breach by Evansville could be compensated by money damages. If a monetary award could be adequate compensation, then Plaintiffs' injury is not irreparable as a matter of law.

The second requirement for a preliminary injunction directs Plaintiffs to show that their injury, if the injunction does not issue, outweighs Defendant's injury, if it does. *Tri-State Generation & Transmission Assoc., Inc.,* 805 F.2d at 356–57. Plaintiffs have produced no evidence demonstrating that the harm flowing from the termination of the Agreements would outweigh Defendant's cost of complying with the injunction. Therefore, the Court concludes that Plaintiffs have

---

**3.** According to a business plan dated December 21, 1992, Distributors also distributes Coors, Coors Light, Coors Extra Gold, Coors Dry, Keystone, Keystone Light, Keystone Dry, Coors Cutter, Corona Light, Tecate, Dos Equis, Seagram's 3.2 Malt Beverage Coolers (all flavors), 7–Up, Clearly Canadian, RC, Evian, A & W Root Beer, Crush Flavors, Country Time Lemonade, Snapple, Heidelberg, and Black Label beverages.

**4.** Plaintiffs emphasize that the Agreements grant them an exclusive right to distribute certain Evansville products and that they have expended considerable marketing efforts to develop their geographical territory for Evansville 3.2% and strong beer. Under the authorities cited by Plaintiffs, however, these facts alone do not support a finding of irreparable harm.

failed to satisfy this requirement for a preliminary injunction as well.

Because Plaintiffs have not met the first two requirements for preliminary injunctive relief, the Court does not reach a determination of whether Plaintiffs have proven the other two elements: likelihood of success on the merits and that the injunction would not be adverse to the public interest.[5] *Id.* at 355.

For the reasons stated above, the Court concludes that Plaintiffs have not satisfied the requirements for preliminary injunctive relief. Therefore, the Court hereby grants Defendant's Motion to Dissolve the TRO.[6] Plaintiffs' Motion for a Preliminary Injunction is, accordingly, denied. Defendant's Motion Requiring Plaintiffs to Post Bond is moot.

IT IS SO ORDERED.

---

**5.** Although the Court expressly declines to render a finding as to whether Plaintiffs have satisfied the third requirement, a showing of a likelihood of success on the merits of the claim, *Tri–State Generation & Transmission Assoc.*, 805 F.2d at 358, the Court notes that the record suggests numerous disputes of fact which would require resolution before success on the merits could be determined.

**6.** The determination whether to dissolve a temporary injunction is "within the sound discretion of the trial court", *Tri–State Generation & Transmission Assoc.*, 805 F.2d at 354, and depends upon "the same considerations that guide a judge in deciding whether to grant or deny a preliminary injunction in the first place," *Knapp Shoes, Inc. v. Sylvania Shoe Manufacturing Corp.*, 15 F.3d 1222, 1225 (1st Cir.1994).